ROBERTS, Chief Justice.
The purpose of this proceeding is pur'portedly to have this court declare the primary election laws of this state, which require a majority vote for the nomination of candidates by political parties for election to public office, to be in violation of Section 8 of Article 16 of the Constitution of this state, F.S.A., which provides for a plurality of votes in order for an elective official to be elected.
The petitioner represents that he is a taxpayer, elector and registered voter of this state. It is conceded at the bar of the court that no candidate for nomination to a public office to be voted upon in the second primary election shortly to be held, is in any manner or wise involved in or interested in this proceeding.
Even a cursory investigation of the laws and history relative to nominations by political parties of candidates for public office in this state would lead inevitably to the conclusion that the instant suit would be fruitless.
Since the adoption of our Constitution in 1885, various methods have 'been adopted from time to time for the nomination by political parties of candidates for public office whose names would be placed upon the general election ballot, such as by a Convention, or by an Executive Committee, or by a petition signed by a certain number of voters, the Bryan Primary Law, Chapter 6469, Acts 1913, which provided for second-choice voting, and the First and Second Primary Law enacted in 1929, Chapter 13761, Acts 1929, now in effect. See Sections 100.061, 100.091, 100.111, 103.081 and 103.111 and 103.121, Florida Statutes 1953, F.S.A.
Such statutes regulating primary elections and nomination of candidates are said to be “essential to the functioning of popular free government”, Mairs v. Peters, Fla., 52 So.2d 793, 795, and are enacted by the Legislature in the exercise of its inherent power to regulate in any field which is identified with the essential public interest. It has also been held by this Court that a statute regulating the conduct of primary elections by prohibiting certain corrupt practices therein, Section 10 of Chapter 6470, Acts 1913, commonly known as the “Trammell Corrupt Practices Act”, which section now appears as Section 104.34, Florida Statutes 1953, F.S.A., was within the purview of Section 26 of Article III of our Constitution, F.S.A., which provides that “Laws shall he passed regulating elections, and prohibiting under adequate penalties, all undue influence thereon from power, bribery, tumult or other improper practice.” Ex parte Hawthorne, 116 Fla. 608, 156 So. 619, 96 A.L.R. 572.
*91 It is true, as contended by petitioner, that this Court has frequently said that the party primary election is an integral part of the election machinery of this State, State ex rel. Merrill v. Gerow, 79 Fla. 804, 85 So. 144; State ex rel. Landis v. Carson, 114 Fla. 451, 154 So. 150. But it does not thereby follow that a primary election is within the purview of Section 8 of Article XVI. ' The' basic and fundamental purpose of a primary election must be kept in mind: It is merely the selective mechanism by which the members of a political party express their preference in the selection of the party’s candidates for public office. The history of our State demonstrates that it is not the only method. Primary elections were unknown at common law and are purely creatures of the statute. McLain v. Fish, 159 Ark. 199, 251 S.W. 686. They are not in reality elections, but are simply nominating devices. Ledgerwood v. Pitts, 122 Tenn. 570, 125 S.W. 1036. They retain their “traditional character as substitute for the caucus, petition or nominating convention.” Ervin v. Richardson, Fla., 70 So.2d 585, 587. In Newberry v. United States, 256 U.S. 232, 41 S.Ct. 469, 472, 65 L.Ed. 913, it was said that primaries “are in no sense elections for an office but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified electors. General provisions touching elections in Constitutions or statutes are not necessarily applicable to primaries — the two things are radically different.” To the same effect are the decisions of the great majority of other courts. Cf. Opinion of the Justices, 43 R.I. 421, 112 A. 900; State v. Woodruff, 68 N.J.L. 89, 52 A. 294; State ex rel. Adair v. Drexel, 74 Neb. 776, 105 N.W. 174; Ladd v. Holmes, 40 Or. 167, 66 P. 714; State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430; Hanna v. Young, 84 Md. 179, 35 A. 674, 34 L.R.A. 55; Montgomery v. Chelf, 118 Ky. 766, 82 S.W. 388.
It is not sufficient merely to look at the isolated language contained in a case in order to determine the real meaning of the language but it is necessary that we go further and examine the cases and ascertain the facts and the object or the purpose sought to be obtained or established in the particular case.
In the case of State ex rel. Merrill v. Gerow, supra, the purpose was to establish quo warranto as a proper method to determine the rights of parties under the primary election law or system as it existed at that time. Whatever was said to the effect that the primary election law was a part of the election machinery of the State must be construed in the light of the questions involved in that case.
In Ex parte Smith, 96 Fla. 512, 118 So. 306, we held that primaries were a substitute for the caucus, petition or nominating convention which were employed to select nominees whose names would be placed upon the general election ballot and that the main object to be accomplished by a primary election is the selection or nomination of candidates for the various political parties participating in such primaries whose names should go on the official ballot to be voted for in the general election. In that case we further held that it was unknown to common law. See also State ex rel. Davis v. Clarke, 96 Fla. 518, 118 So. 308.
The selection of nominees whose names are to be placed on the general election ballot is not provided for in the Constitution. Statutory provisions are the only authority for primary elections. In the case of Bowden v. Carter, Fla., 65 So.2d 871, we held that primaries are a part (not all) of the election machinery but are not the equivalent of the general election.
In State ex rel. Gandy v. Page, 125 Fla. 348, 169 So. 854, we held that inasmuch as primary elections were a part (not all) of the elective process, only electors duly qualified under Section 1, Article VI, of the Florida Constitution, F.S.A., may participate.
In Ex parte Hawthorne, supra, a clear distinction is made between a primary and a general election.
*92 Practically all of the cases holding that primary elections aré a part of the election machinery relate to discrimination under the Fourteenth Amendment of the United States Constitution due to race, color or creed. No such question is involved in the case at bar.
Even under the present primary election law, a person may be nominated for an elective office and have his name printed upon the election ballot under certain circumstances without submitting his candidacy for nomination in a direct primary.
It is a part of current history in this State, see State ex rel. Fraser v. Gay, 158 Fla. 465, 28 So.2d 901, that only recently Edwin G. Fraser was nominated by the State Executive Committee for the elective office of Comptroller and his name was printed upon the general election ballot by reason of such nomination. The law at that time provided for such nomination by the State Executive Committee. This law was a part of the primary election law and, therefore, a part of the election machinery of the State.
In a more recent case a Senator died. The Executive Committee of the district, which was composed of only one county, nominated a candidate of the Democratic Party whose name was printed upon the general election ballot. Such homination had the same force and effect as if the nominee had- been selected in a primary election.
In the case of Alexander v. Booth, Fla., 56 So.2d 716, 719, all rights asserted arose under the primary, election law. The Republican Party was a political party in this State under F.S. Section 103.101, F.S.A. The purpose of the suit was to determine the manner or method of selecting National Committeemen and National Committeewomen and Delegates to the National Republican Convention. It was claimed, on th.e one hand, that the statute gave the individual members of the Republican Party the right to elect persons’ -to fill these offices either in a primary or by some other method or manner. On the other hand, it was claimed that the power was vested in the Executive Committee of the Party to exercise a discretion of determining the manner or method of electing party officers and if the Committee determined that such officers should be selected or elected 'by the Committee, then the Committee had the power to select or elect instead of having such selection or election made by direct vote in a primary. This Court said:
“It is not necessary that the individual members of the Republican Party vote for these party officers. There is no merit to the contention that there can be no election unless the whole membership of a party is given an opportunity to vote for such party officers. The members of the party are given the privilege of voting for members of the State Executive Committee. The State Executive Committee elects its officers; such as, chairman, vice-chairman, secretary, treasurer, and they become party officers although not elected directly by the membership of the party. The State Executive Committee of the party represents the party. The remedy of the individual members of the party is to vote for candidates for the State Executive Committee who they consider will carry out their wishes.”
The language used by this Court in the case of Ervin v. Richardson, 70 So.2d 585, 587, supra, as follows:
“ * * * Neither can we now escape the conclusion that the primary is a part of the general election machinery of the State and that it is comprehended 'by those provisions of the Constitution regulating elections, that where the Constitution has conferred the right to vote, the legislature is powerless to impose regulations in a primary or general election that will unduly limit the rights.”
is an isolated paragraph taken out of the context and ignores the rest of the opinion, and more particularly, the following:
*93 “ * * * It is admitted that the primary is a part of the general election machinery and as such retains its traditional character as substitute for the caucus petition or nominating convention. It has no such effect as to the final or general election as contemplated by the constitution.”
It may be true that the primary is provided for as a part of the primary election law and that the primary election law is a part of the general election machinery," but it does not follow that because the Constitution has conferred the right to vote in a general election, the Legislature is powerless to impose regulations in á primary law that will regulate party nominations. It is true that the primary, -when provided- for by statute, is a part of the primary system and, therefore, a part of the general election machinery and such primary is the substitute for the caucus, petition, nominating convention or executive committee, but in addition to the primary, the Legislature may provide for nominations under certain circumstances by county or state executive committees.
In the case of Ervin v. Richardson, supra, the conditions existed which, under the statute, made the primary election the proper method of nominating candidates by the Democratic Party whose names should be printed upon the general election ballot. Under the proposed primary,. although' a county commissioner was a county officer and was required to be elected in the general election ’by the voters of the county, he was to be nominated only by the voters of his district. By this method all oLthe voters of the county would be privileged to vote for a county commissioner in the general election but only the Democratic voters of a particular district would have .any voice in nominating the candidate from that district to be voted upon by all of the voters in the county in the general election. Under the facts shown we held that if a county commissioner was to be nominated in a primary election, then all the voters of the county should have the right to participate in selecting the nominee. On the other hand, if the conditions existed as provided for in F.S. Section 100.111, F.S.A., requiring a nomination by the Executive Committee of the county, then it follows that 'all of the Democratic voters of the county would be represented by the members of such committee chosen by them. The present primary election law provides that the county executive committee should be composed - of one man and. one woman • from each precinct of the county, and the State Committee of one man" and one woman from each' county. Under certain conditions the county committee may make a nomination for an elective office within the county just as the State Executive Committee may make a nomination for the election of a state officer. Although the nomination is not made in a direct primary, the voters of the Party are represented in the Executive Committee and participate in making the nomination through their representatives. A majority and not a plurality vote is required..
F.S. Chapters 100 and 103, F.S.A., provide for political parties and the executive committees of such parties and'for some of' their powers and duties.
A portion of F.S. Section 100.111', F.S.A., reads as follows:
“ * * -* should a vacancy occur in any nomination for county office-or in any county office less than thirty days ’before a general election, or should a ^vacancy occur in any .nomination for a state office or in any state office less than forty-five days prior to a general election, then, .and .in that event, the county executive committee or the state executive committee, depending upon the nature of the office for which a vacancy in nomination shall have occurred, shall fill such vacancy in nomination by selecting a nominee for such office and all such nominations whether by primary or by executive committee shall have the same force and effect and shall entitle the nominees to all the rights and privileges that *94 would accrue to them if they had been nominated in the regular primary elections.”
We thus see that every voter of the party under these sections is represented on the county committee and the state committee and the nomination of county officers shall be made under the circumstances therein named by the county committee and for state officers by the state committee. Such provisions do not “unduly limit the right” to vote. The language used in Er-vin v. Richardson, supra, is not susceptible to the construction placed upon it by petitioner.
The above mentioned Chapters, that is, F.S. 100 and 103, F.S.A., are integral parts of the primary election laws or machinery provided for by the Legislature.
We hold, then, in line with the great weight of authority, that even though a primary election or nomination is an integral part of the general election machinery of this State, it is not the only part and it is not an “election” in any real sense. A statute requiring such primary elections, or nominations, by primary, convention, or executive committee, need not necessarily conform to an organic provision relating to “election”. Such a regulatory statute cannot, of course, unduly limit a right to vote specifically conferred by a provision of our organic law, compare Ervin v. Richardson, supra; and it goes without saying that the State cannot exercise its police power in this respect in contravention of the basic rights guaranteed by our State and Federal Constitutions. But no such question is here presented; the petitioner contends only that the statute in question contravenes the provision of Section 8 of Article XVI of the State Constitution, F.S.A., and that a plurality nominates in a primary.
But it is clear that no such contention can be here made. If a primary election or nomination does not automatically come within any organic provision relating to “elections” (and we have herein adopted the majority rule that it does not), then it follows that the organic provision in question cannot be interpreted as applicable to such primary elections or nominations. The constitutional provision requires a plurality of votes in an “election of officers” ; the primary election machinery does not — as it cannot — result in an “election of officers” — it results only in the selection or nomination of candidates for elective public office by the members of a political party, in the manner provided by Statute.
For the reasons stated, we hold that an “election of officers”, as used in Section 8 of Article XVI, has reference only to the final or general election in which the entire electorate of the State (or political subdivision thereof, as the case may be) participates, and that it does not apply to a primary election or a nomination.
The writ prayed for should be and it is hereby denied, and the petition is dismissed at the cost of petitioner.
TERRELL, SEBRING, MATHEWS and DREW, JJ., concur.
HOBSON, J., concurs specially.
THOMAS, J., not participating.